**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Michael Quiel,

            Petitioner,

v.

USA,

            Respondent.

No. CV-16-01535-PHX-JAT (MHB)

CR-11-02385-PHX-JAT

**ORDER**

Pending before the Court is Movant's amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct a Sentence by a Person in Federal Custody (Doc. 7.) The Government has answered, (Doc. 11), and Movant has replied, (Doc. 14.) Magistrate Judge Michelle H. Burns has issued a Report and Recommendation ("R&R") recommending that Movant's claims be denied and dismissed with prejudice, that a Certificate of Appealability be denied, and that leave to proceed *in forma pauperis* on appeal be denied. (Doc. 17.) Movant objects to the R&R. (Doc. 18.)

Relatedly, pending before the Court is Movant's Motion to Compel Government to Produce Documents. (Doc. 19.) The Government opposes this request. (Doc. 20.)

## I.    Background

Movant does not dispute the procedural background provided by the Magistrate Judge. Therefore, this Court adopts that background, except regarding Movant's subsequently decided appeal:

On December 8, 2011, a grand jury indicted Movant Michael Quiel with one count of Conspiracy to Defraud the United States, two counts of Willful Subscription to False Individual Income Tax Returns, and two counts of Willful Failure to File Reports of Foreign Bank and Financial Accounts ("FBAR").[1] (CR Docs. 3, 463.)

On September 24, 2013, Movant was convicted on two counts of Willful Subscription to False Individual Income Tax Returns, in violation of 26 U.S.C. § 7206(1).[2] He was sentenced to a 10-month term of imprisonment, to be followed by a one-year term of supervised release. Movant appealed his convictions to the Ninth Circuit Court of Appeals arguing, the following:

- "[Movant] was denied his constitutional right to cross-examine Rusch on three exhibits entered on redirect"
- "The Government's repeated reference to [Movant's] complicated securities transactions as fraud was prejudicial and the court's allowing such references over objection was error"
- "[Movant] was denied his constitutional right to counsel by the trial court's allowing Rusch to testify in violation of [Movant's] attorney-client privilege"
- "The trial court erroneously refused to require production of the special agent's report, [Movant's] individual master file, and the notes of the Government's chief investigator, and refused to review the documents in camera or even preserve them for review by this court"

(United States v. Quiel, No. 13-10503, Doc. 20.)

The Ninth Circuit affirmed Movant's convictions on December 19, 2014, and the mandate issued on February 6, 2015. United States v. Quiel, 595 Fed.Appx. 692 (9th Cir. 2014), cert. denied, 135 S.Ct. 2336 (2015). The Ninth Circuit held, in pertinent part:

> The question of whether Defendants willfully failed to report income ... is one of fact for the jury. See *Rykoff v. United States*, 40 F.3d 305, 307-08 (9th Cir. 1994). The jury could have concluded that Kerr and Quiel knew they had a duty to

---

[1] Co-defendant Stephen Kerr ("Kerr") was charged with these same counts, (CR Docs. 3, 463), and Christopher Rusch ("Rusch"), Movant and Kerr's former attorney, was also charged with one count of Conspiracy to Defraud the United States and an additional count of failure to file an FBAR, which was added later (CR Docs. 3, 463, 331 at 1607). Rusch subsequently entered into a plea agreement compelling him to testify at the request of the United States. (CR Docs. 463, 415.)

[2] The record reflects that shortly after the jury returned its verdict, Movant filed a Motion for a Judgment of Acquittal or for a New Trial. (CR Docs. 301, 302, 304.) The Court denied the Motion on August 16, 2013. (CR Doc. 346.)

report the income from their foreign accounts, because Christopher Rusch, their attorney and business partner, testified that the accounts were set up using nominees under Kerr's and Quiel's control in order to evade reporting requirements. Even without Rusch's testimony, the jury could have inferred control because (a) the accounts were traded in Kerr's and Quiel's stock for their benefit; (b) the foreign firms never served their stated purpose of finding investors; and (c) these firms were not actual, functioning businesses. Additionally, even without Rusch's testimony, the jury could infer motive from Kerr's having recently paid high tax rates and Quiel's recent payment of a large tax penalty before either engaged in these transactions.

On March 13, 2015, Movant and Kerr filed a Joint Motion for New Trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure alleging newly discovered evidence. (CR Doc. 454.) Specifically, Defendants' argued: (1) "evidence has emerged showing that Rusch engaged in fraudulent activities"; (2) "the Government has agreed 'to look the other way while its witness commits additional crimes'"; and (3) "Pierre Gabris, a Swiss-national and alleged participant in the structuring of the Swiss accounts, would testify that 'he did not prepare or send trial exhibits 51 and 52,' which were offered into evidence on Rusch's re-direct" and "contain emails originally sent from Gabris to Rusch, who forwarded them to Defendants, regarding accounting statements from Defendants' Swiss corporations." (CR Docs. 454, 463.) The Court denied the Joint Motion for New Trial on July 15, 2015, (CR Doc. 463), and on July 28, 2015, Movant and Kerr filed a Notice of Appeal from the July 15, 2015 Order (CR Doc. 467).

On December 28, 2015, in the appellate court case, Movant and Kerr filed a Joint Motion for Remand to the District Court & Motion to Stay Briefing Schedule, arguing that the Court of Appeals should remand the action to the district court so it can: (1) "consider evidence that was before it but which that [the district] Court did not consider," and (2) consider new evidence and argument that either came to light after the Joint Motion for New Trial was filed or "was [not] otherwise ... presented." (United States v. Kerr, et al., No. 15-10393, Doc. 17.)

The Ninth Circuit denied the Motion for Remand without prejudice to the filing of "a renewed motion accompanied by an indication that the district court is willing to entertain the limited remand motion." (United States v. Kerr, et al., No. 15-10393, Doc. 19.) On March 7, 2016, Movant and Kerr filed a Joint Motion to Accept Remand to Consider New Evidence for a New Trial in the district court. (CR Doc. 471.) Defendants argued: (1) "This Court should accept a remand so as to consider new evidence and

argument that were not before this Court but which came to light while the motion was pending, after it was appealed, or that was otherwise not presented"; and (2) "This Court should accept remand so as to consider evidence that was presented to this Court" but "which this Court did not consider." (CR Doc. 471.) Defendants' newly discovered evidence consisted of four declarations, one of which came from Jerome Perucchi that was signed on June 4, 2015, and was used as part of civil lawsuit in a state court matter. (CR Doc. 471.)

While the Joint Motion was pending before the district court, on May 17, 2016, Movant filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (CV Doc. 1; CR Doc. 474.) Thereafter, the district court directed the parties to show cause why the § 2255 proceeding should not be stayed pending the Court's determination on the Joint Motion to Accept Remand. (CV Doc. 3.)

Then, on July 22, 2016, the Court denied the Joint Motion to Accept Remand (CR Doc. 475),[3] and on August 2, 2016, the Court discharged the Order to Show Cause after concluding that it had been mooted by the Court's ruling on the Joint Motion (CV Doc. 6). In the same August 2, 2016 Order, the Court also denied Movant's § 2255 Motion with leave to amend and gave Movant 30 days to file an amended motion using the court-approved form. (CV Doc. 6.)

On September 1, 2016, Movant filed an amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV Doc. 7). In the amended § 2255 Motion, Movant alleges four grounds for relief. In Ground One, he claims that he received ineffective assistance of counsel because his trial attorney refused to call

---

[3] On July 27, 2016, Movant and Kerr filed a Joint Amended Notice of Appeal seeking to appeal both the district court's denial of the Joint Motion for New Trial (CR Doc. 463) and the denial of the Joint Motion to Accept Remand (CR Doc. 475). In their Joint Brief filed on December 12, 2016, Defendants argued:

I. When A District Court Does Not Even Consider Evidence And Then Analyzes Other Allegations But Not The Evidence Itself, Is It An Abuse Of Discretion?

II. When A District Court Fails To Properly Analyze The Evidence With The Appropriate Legal Standards, Is It An Abuse Of Discretion?

III. When A District Court Fails To Properly Apply The Law To Newly Discovered Evidence, As Well As Analyze The Evidence, Is It An Abuse Of Discretion?

(United States v. Kerr, et al., No. 15-10393, Doc. 32.)

- 4 -

any witnesses or submit any evidence after the government rested its case in chief. In Ground Two, Movant appears to argue that his due process rights were violated by the introduction at trial of perjured testimony that the government knew or should have known was false. Movant further alleges that the government failed or refused to produce evidence that would confirm that perjured testimony was introduced at trial. In Ground Three, Movant claims that the government has not produced evidence that it properly appointed the attorneys who prosecuted him, and the government has not demonstrated that it followed "proper procedure when it began prosecution." In Ground Four, Movant argues that he received ineffective assistance of counsel in connection with "matters that occurred pre and post trial." (CV Docs. 7, 10.)

(Doc. 17 at 1–5.)

On August 22, 2017, Movant filed Movant's Motion to Compel Government to Produce Documents, requesting that the Court order the Government to produce "amended Forms 1040 for the tax years 2000-2003, along with the FBAR returns for 2000-2003 allegedly prepared with these amended forms." (Doc. 19.) On August 29, 2017, the Government filed a motion opposing this request. (Doc. 20.)

On September 27, 2017, the Ninth Circuit Court of Appeals affirmed this Court's denial of Movant's motion for a new trial and motion for remand in the underlying criminal matter. *United States v. Kerr*, No. 15-10393, 2017 WL 4284757 (9th Cir. Sept. 27, 2017).

## II. Legal Standard

This Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" in the R&R. 28 U.S.C. § 636(b)(1) (2012). "Within fourteen days after being served with a copy, any party may serve and file written objections" to the R&R. *Id.* This Court "must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) ("Following *Reyna-Tapia*, this Court concludes that *de novo* review of factual and legal

issues is required if objections are made, 'but not otherwise.'" (internal citation omitted) (emphasis in original)).

Movant objects to all of the Magistrate Judge's legal findings and many of her factual findings, (Doc. 18); therefore, this Court will review all of Movant's claims de novo.

## III. Discussion

### A. Jurisdiction

Under 28 U.S.C. § 2255, this Court has limited jurisdiction to adjudicate a collateral action by a "prisoner in custody under sentence of a court established by Act of Congress." 28 U.S.C. § 2255 (2012); *see United States v. Reves*, 774 F.3d 562, 565 (9th Cir. 2014) (noting that the "in custody" requirement is jurisdictional and must be satisfied before consideration of the merits). One is in custody when sentenced by a federal court to incarceration or conditional release. *Maleng v. Cook*, 490 U.S. 488, 491 (1989) (per curiam); *see Reves*, 774 F.3d at 565. This jurisdictional requirement is satisfied when a collateral action is initiated before custody ends. *Maleng*, 490 U.S. at 491.

According to Movant, his term of supervised release terminates on January 13, 2017. (CR Doc. 477.) Movant initiated this collateral action on May 17, 2016. (Doc. 1.) Therefore, because Movant initiated his collateral action before the end of custody, this Court has jurisdiction under Section 2255.

### B. Timeliness

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), collateral actions under Section 2255 are subject to a 1-year statute of limitations. 28 U.S.C. § 2255(f) (2012). As relevant, the limitations period proceeds from the date that a movant's conviction becomes final *Id.*

The statute of limitations is not jurisdictional, and is treated as an affirmative defense to be raised by the Government, unless a court discretionarily raises the issue *sua sponte*. *Day v. McDonough*, 547 U.S. 198, 209 (2006). Each claim that is challenged by the government as time-barred, or which a court considers *sua sponte*, must individually

meet the requirements of the statute of limitations. *See Mardesich v. Cate*, 668 F.3d 1164, 1170–71 (9th Cir. 2012) (applying a "claim-by-claim" approach to Section 2244's statute of limitations); *see also Clay v. United States*, 537 U.S. 522, 528–30 (2003) (reading portions of the statute of limitations requirements in Sections 2244 and 2255 to have the same meaning despite "verbal differences"). When a defendant petitions the Supreme Court for certiorari, the conviction "becomes final when the Supreme Court either denies the writ or issues a decision on its merits." *Clay*, 537 U.S. at 529 n.4 (internal citation omitted).

Federal Rule of Civil Procedure 6(a) provides four guides for calculating Section 2255's statute of limitations. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001); *see also* Rule 12 of Rules Governing Section 2255 Proceedings ("The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."). First, exclude the day of the triggering event. Fed. R. Civ. P. 6(a)(1). Second, include all intermediate days. *Id.* Third, include the last day, but if it is a Saturday, Sunday, or legal holiday, then proceed to the end of the next unqualified day. *Id.* Fourth, the last day ends at midnight when filing electronically or when the clerk's office closes when filing by other means. *Id.* A year is 365 days in a normal year and 366 days in a leap year. *See United States v. Tawab*, 984 F.2d 1533, 1534 (9th Cir. 1993); *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000).

The Government asserts that the statute of limitations bars "much of [Movant's] false testimony claim." (Doc. 11 at 4.) The Supreme Court denied certiorari, making Movant's claim final, on May 18, 2015. *Quiel v. United States*, 135 S. Ct. 2336 (mem.) (2015). Movant filed this collateral attack in a leap year on May 17, 2016. (Doc. 1.) Therefore, Movant's claim was timely filed on the day before the limitations period ended. The Government concedes that Movant's filing was punctual, but argues that any new facts that surfaced in the September 1, 2016 amendment, particularly Movant's quotations from a declaration by Jerome Perucchi ("Perucchi Declaration"), are time-

barred. (Doc. 11 at 4–5.) Movant, in contrast, claims that he cited the Perucchi Declaration in the original filing, making the time-bar inapplicable. (Doc. 14 at 10.)

In a Section 2255 action, relation back of claims is governed by Federal Rule of Civil Procedure 15(c). *Mayle v. Felix*, 545 U.S. 644, 649 (2005). Under Rule 15(c), relation back occurs when an "amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Meaning, in the context of a Section 2255 proceeding, that the amended claims must "arise from the same core facts as the timely filed claims," and not "depend upon events separate in 'both time and type' from the originally raised episodes." *Mayle*, 545 U.S. at 657 (internal citation omitted).

Contrary to Movant's characterization, (Doc. 14 at 10), the Perucchi Declaration was not cited in the original filing. *See* (Doc. 1 at 21.) Nor was the Perucchi Declaration attached to the original filing, as it was with the amended filing. (Doc. 7-4.) Rather, the original filing discusses Rusch's allegedly perjured testimony that he surreptitiously notarized Perucchi's signature and references Perucchi's involvement with one of the Swiss funds. (*Id.*) As part of this discussion, Movant cites documents that themselves cite the Perucchi Declaration. (*Id.*) (citing CR Docs. 471 & 473.) The disputed quotations from the Perucchi Declaration concern the same narrow grouping of facts as the discussion in the original filing; namely, Perucchi's role in the Swiss fund, his awareness of the fund's operations, and which documents he personally signed. (Doc. 7 at 6; Doc. 7-1 at 8.) Thus, because both the new quotations and the original filing discuss the same common core of operative facts, which concern events that occurred at the same time and were of the same type, the quotations relate back to the original filing date and are not time-barred. The Government does not specifically identify, and the Court does not find, any other claims barred by the statute of limitations. Thus, none of Movant's claims are time-barred.

### C. The Law of the Case, Waiver, and Procedural Default

The Government argues that many of Movant's claims have been waived,

procedurally-defaulted, or already considered by this Court. (Doc. 11.)

The Ninth Circuit Court of Appeals affirmed this Court's determination that the information in the Perucchi Declaration and information relating to Rusch continuing to practice law under a pseudonym do not provide any basis for relief. *United States v. Kerr*, No. 15-10393, 2017 WL 4284757 (9th Cir. Sept. 27, 2017); *see* (CR Doc. 475 at 12 n.5; CR Doc. 463; CR Doc. 475 at 12.) Under the law of the case doctrine, this Court is generally prohibited from reconsidering issues already decided by an appellate court, *United States v. Alexander*, 106 F.3d 874 (9th Cir. 1997); therefore, this Court cannot reconsider these issues.

For the Court to reach the merits of Movant's remaining claims, Movant must show that his claims are neither procedurally defaulted nor waived. *Bousley v. United States*, 523 U.S. 614, 622 (1998). A defendant waives defenses or objections, not raised before trial, regarding "defect[s] in instituting the prosecution"—including "error[s] in the grand-jury proceeding"—and "defect[s] in the indictment." Fed. R. Crim. P. 12(b)(3); *see also Davis v. United States*, 411 U.S. 233, 241–42 (1973) (holding that Rule 12 waiver applies to Section 2255 proceedings). Procedural default bars habeas review of a movant's viable claims that were not raised on direct review. *Bousley*, 523 U.S. at 622.

In the Section 2255 context, a movant can only overcome waiver and procedural default by showing either "cause" and "prejudice" or "actual innocence." *Id.* Failure to satisfy either of the cause-and-prejudice factors obviates the need to evaluate the other. *See United States v. Frady*, 456 U.S. 152, 167 (1982). Learning that a new claim is a possibility—based upon previously undiscovered facts that were discoverable with reasonable diligence—does not, alone, amount to cause. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). There must be some "objective factor external to the defense" that impeded counsel's ability to comply with a procedural rule, such as "a factual or legal basis for a claim [that] was not reasonably available to counsel" or a severe error rendering counsel constitutionally ineffective that "impute[s]" default to the Government.

*Id.* (applying these rules to the analogous Section 2254 exhaustion context); *see Coleman v. Thompson*, 501 U.S. 722, 745–46 (1991) (discussing the overlapping policy interest in finality that influences procedural default rules in Section 2255 and Section 2254 actions); *Frady*, 456 U.S. at 166 (noting that federal prisoners under Section 2255 do not receive "preferred status when they seek postconviction relief," when compared to Section 2254 prisoners). The actual innocence exception is "very narrow," *Sawyer v. Whitley*, 505 U.S. 333, 339–41 (1992), requiring a showing that "'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted'" the movant. *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)).

Waiver and procedural default do not apply to claims of ineffective assistance of trial counsel, *Massaro v. United States*, 538 U.S. 500, 509 (2003), or claims that challenge a court's subject-matter jurisdiction, *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013); *United States v. Durham*, 941 F.2d 886, 892 (9th Cir. 1991) (refusing to evaluate procedural default due to challenge to court's jurisdiction based upon allegedly improper appointment of a government attorney).

Therefore, Movant's Ground One and Ground Four ineffective assistance of counsel claims are neither procedurally defaulted nor waived.

### 1. Ground Two

In Ground Two, Movant makes four Due Process arguments alleging Government perjury. (Doc. 7 at 6; Doc. 7-1 at 7–13.) First, Movant claims that Cheryl Bradley and Christopher Rusch, Government witnesses, committed perjury by testifying that Movant had prepared FBAR forms, which Movant claims do not exist. (Doc. 7-1 at 7.) Second, Movant claims that Rusch perjured himself by testifying that he printed and faxed emails that would become Exhibits 52 and 53 to Movant; Movant claims he never received these documents. (*Id.* at 9.) Third, Movant claims that Rusch provided "false testimony" by using Movant's "passport and personal information without [Movant's] knowledge or permission." (*Id.*) Fourth, Movant claims that Rusch perjured himself by testifying that

Rusch created and oversaw the Swiss funds for Movant's benefit, while Movant contends that he was only "to be the initial investor into the foreign hedge funds." (*Id.* at 9–10.)

All of Movant's remaining Ground Two claims are procedurally-defaulted. Movant did not raise any of these arguments on direct appeal and he fails to show cause. Movant's second, third, and fourth claims concern facts Movant knew before appeal. Movant's first claim, concerning the existence of the FBARs, involves information that Movant could have learned with reasonable diligence prior to appeal. Finally, Movant does not suggest, and the Court does not find, that he has made a showing of actual innocence.

### 2. Ground Three

Whether Movant has waived or procedurally defaulted his Ground Three claims turns on their meaning. In Ground Three, Movant makes two arguments. One challenges the appointment of the Government attorneys who prosecuted the underlying criminal case. (Doc. 7 at 7; Doc. 7-1 at 17.) The other concerns his criminal referral. (*Id.*)

First, Movant argues that the Government should be compelled to disclose the documents proving that the attorneys representing the United States were properly appointed. (Doc. 7-1 at 16.) If such disclosure establishes that the attorneys were improperly appointed, Movant argues, then "the charges were wrongfully brought" against Movant. (*Id.*) Movant's suggested import of this claim is not clear. Movant could be arguing that because the Government attorneys were improperly appointed, the indictment is nullified. Alternatively, Movant could be arguing that the Article III case and controversy requirement was not satisfied, because the United States was not a party to the action, preventing the Court from having had subject-matter jurisdiction over the criminal matter. *See* (*Id.*)

Second, Movant asks that the Court to order Government disclosure of Movant's criminal referral from the IRS, which Movant claims an "appellate body" has already ordered the Government to disclose. (Doc. 7 at 7.)

To the extent that both of Movant's Ground Three claims relate to defects in the

indictment or with the criminal referral, they are waived and procedurally defaulted. Movant did not raise these issues pretrial, as required by Rule 12(b), and did not raise them on direct review, as required by the procedural default standard. Further, Movant has not shown cause, because information relating to the appointment of attorneys and the criminal referral was discoverable with reasonable diligence prior to trial. Movant does not allege that the factual or legal basis for the claim was not reasonably available to counsel or that counsel was constitutionally ineffective for failing to uncover these facts or make these claims.

Furthermore, Movant has not presented any evidence that would meet the extremely narrow test of actual innocence. Errors in the indictment or with the grand jury process, taken as true, would not be so forceful as to prevent any reasonable juror from convicting Movant, taking all evidence into consideration. Thus, Movant's claims, as stylized, will not be considered, because Movant has shown neither cause nor actual innocence.

In contrast, to the extent that Movant's appointment claim can be read as suggesting that this Court did not have subject-matter jurisdiction in the underlying criminal case, it is neither waived nor procedurally-defaulted.

## D. Grounds One and Four: Ineffective Assistance of Counsel

Movant identifies two attorneys who allegedly provided him with constitutionally ineffective assistance of counsel. The first is Michael Minns, Movant's attorney during trial and on appeal. (Doc. 7 at 5; Doc. 7-1 at 1–6.) The second is Joy Bertrand, Movant's local counsel (Doc. 7 at 8.)

The Sixth Amendment provides criminal defendants who face incarceration with the right to effective assistance of counsel at "all critical stages of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004); *see* U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Critical stages of the criminal process include, but are not limited to, the guilt-phase of a trial, *United States v. Wade*, 388 U.S. 218, 226–27 (1967), sentencing, *Mempa v. Rhay*, 389 U.S. 128, 137 (1967), and motions for a

new trial filed before a direct appeal-by-right is waived or decided, *Rodgers v. Marshall*, 678 F.3d 1149, 1156–59 (9th Cir. 2012), *rev'd on other grounds*, 569 U.S. 58 (2013) (per curiam); *United States v. Del Muro*, 87 F.3d 1078, 1080 (9th Cir. 1996) (per curiam); *Menefield v. Borg*, 881 F.2d 696, 699 (9th Cir. 1989); *but cf. Rodgers*, 569 U.S. at 61 (assuming, without deciding, that the posttrial, preappeal period for a new trial motion is a critical stage of the proceeding).

To establish ineffective assistance of counsel in violation of the Sixth Amendment, a movant must show both deficient performance and prejudice. *Strickland*, 466 U.S. at 687. A court is free to evaluate either factor first and need not proceed with the inquiry if a movant fails to satisfy the first considered factor. *Id.* at 696.

Deficient performance exists where counsel's performance "fell below an objective standard of reasonableness" in light of "prevailing professional norms." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential," given "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant." *Id.* at 689. Given "the distorting effects of hindsight," a court "must indulge a strong presumption" that counsel's performance is not objectively unreasonable. *Id.* at 689–90. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 691. Professional standards of conduct serve as non-dispositive guides for evaluating counsel's performance. *Id.* at 688. Mere conclusory allegations of ineffective assistance do not provide the basis for Section 2255 relief. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

Prejudice requires a movant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). A court evaluates a movant's showing in light of "the totality of the evidence" that was before the trial court. *Strickland*, 466 U.S. at 695–96.

Ultimately, this analysis is aimed at determining "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

### 1. Ground One

Movant claims that his trial counsel, Mr. Minns, was constitutionally ineffective for failing to call any witnesses or to present any evidence after the Government rested its case-in-chief. (Doc. 7 at 5.) Movant alleges that Mr. Minns acted upon a belief that the Government had not met its burden of proof. (*Id.*) Specifically, Movant cites four defense expert witnesses that had prepared reports, but who Mr. Minns did not call during the guilt-phase; "multiple factual witnesses ready to testify on" Movant's behalf, who Mr. Minns did not call during the guilt-phase; Movant's unfulfilled desire to testify at trial; and unfavorable statements made by Mr. Minns as to his own performance. (*Id.*; Doc. 7-1 at 1–6.)

The Court rejects the factual basis that Mr. Minns was ineffective for not calling any witnesses at trial. While Mr. Minns did not personally call any witnesses, Mr. Kimerer, attorney for Movant's co-defendant, called Gary Stuart, a joint-defense expert witness. (CR Doc. 336.) Mr. Stuart was retained by both Movant and his co-defendant, had met with Mr. Minns and Movant, referred to both Movant and his co-defendant when giving testimony, formed his opinion, in part, on documents provided by both Movant and his co-defendant, (*Id.* at 2648, 2654, 2657, 2664–65, 2670), and Mr. Minns referred to the witness as "a joint witness" as to which Mr. Kimerer and Mr. Minns "both had a great deal of input," (CR Doc. 323 at 45.) Mr. Stuart testified that Cristopher Rusch, Movant's former attorney turned Government witness, had engaged in multiple violations of The California Rules of Professional Conduct. (*Id.*) If believed, Mr. Stuart's testimony could have served to impeach Rusch as a witness and to insulate Movant and his co-defendant from criminal liability by establishing a reliance-on-counsel defense based, in part, upon Rusch's alleged violation of his duties as an attorney. *See* (CR Doc. 336 at 2658.) Thus, while it is technically not false that Mr. Minns did not personally call

nor directly examine a witness as part of the defense's case-in-chief, it is certainly factually incorrect to suggest that Mr. Minns was not involved in the presentation of an expert witness for the defense.

Furthermore, insofar as Movant is claiming that counsel was ineffective for failing to call unidentified witnesses or to call identified factual witnesses whose purported testimony has not been established, Movant has not shown prejudice. Prejudice cannot be established by mere speculation that unidentified witnesses could be found, that they would agree to testify, and that the content of their testimony would be favorable. *Wildeman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001); *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000); *United States v. Harden*, 846 F.2d 1229, 1231–32 (9th Cir. 1988) (denying a movant's ineffective assistance claim, in part, upon failure to show that a proposed witness would be willing to testify); *United States v. Murray*, 751 F.2d 1528, 1535 (9th Cir. 1985) (denying an ineffective assistance claim, in part, on a movant's failure to "identify any witnesses that his counsel should have called that could have been helpful."); *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) ("[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative.").

Additionally, Movant has not shown that counsel was deficient by declining to call the four identified expert witnesses: Matthew Kadish, Gail Prather, Cynthia King, and Ron Braver. There are a number of reasonable strategic considerations that could influence an attorney's decision to call, or refrain from calling, an expert witness, including: the attorney's theory of the case, the strength and focus of the opposing party's case, the conclusions and the certainty of the expert's report, an evaluation of the expert's potential demeanor and presence on the stand, the expert's vulnerability to cross-examination, the role the expert will have in either clarifying or diluting issues in the case, and financial considerations. As the American Bar Association describes in its aspirational rules for criminal defense counsel:

Defense counsel has no obligation to present evidence, and should always

consider, in consultation with the client, whether a decision not to present evidence may be in the client's best interest. In making this decision, defense counsel should consider the impact of any evidence the defense would present and the potential damage that prosecution cross-examination or a rebuttal case could do, as well as the quality of the prosecution's evidence.

ABA Criminal Justice Standard for the Defense Function 4-7.6 (4th ed. 2017).

Movant was convicted under 26 U.S.C. § 7206(1) for willfully filing a false tax return, which required the Government to prove beyond a reasonable doubt that (1) "the defendant made and signed a tax return for the respective years that he knew contained false information as to a material matter," (2) "the returns contained a written declaration that they were being signed subject to the penalties of perjury," and (3) "in filing the false tax returns the defendant acted willfully." (CR Doc. 339 at 3018.) A matter is material if "it had a natural tendency to influence or was capable of influencing the decisions or activities of the Internal Revenue Service." (*Id.*)

The primary focus of these witnesses' testimony was on matters for which Movant was ultimately not convicted. Mr. Kadish's opinion was expressly limited to Movant's duty to file FBARs, (CR Doc. 198-1 at 1), a charge that was dismissed with prejudice, (CR Doc. 308.) Ms. Prather and Mr. Braver concluded that Movant owed no net tax, (CR Doc. 198-2 at 2; CR Doc. 370), which is not an element of Section 7206(1). Ms. King's report only discusses securities laws, (CR Doc. 198-3), under which no charges were filed.

Beyond the general considerations that bear on an attorney's decision to call a witness, and the irrelevancy of most the proposed experts' opinions, there were specific reasons that could have influenced Mr. Minns' decision not to call Mr. Kadish and Mr. Braver. Rusch, to the defense's surprise, testified that the shares in the Swiss funds were bearer shares. (Doc. 335 at 2605.) Mr. Kadish told Mr. Minns that this may trigger FBAR reporting duties for U.S. citizens holding those shares. (*Id.*) Mr. Minns became concerned that this might raise "a question of first impression" as to the FBAR reporting requirements, because Movant never held bearer shares, but was accused of accessing the

account through a nominee who did hold those shares. (*Id.*) Thus, there was a risk on cross-examination that Mr. Kadish would admit that Movant had an FBAR reporting duty. (*Id.*) Given that Mr. Kadish's testimony was meant to rebut the FBAR reporting charge, it would have been risky to call him given his newfound uncertainty of Movant's duty to report.

Furthermore, there were reasonable strategic reasons not to call Mr. Braver during the guilt-phase of the trial. While Mr. Braver ultimately concluded that Movant owed no net tax, which benefitted Movant during sentencing, he did testify that Movant had unreported income during 2007 and 2008, which would have reinforced the Government's case for the crime that Movant was ultimately convicted. (CR Doc. 370 at 125–26, 131.) Additionally, it made sense to not call both Mr. Braver and Ms. Prather, as Mr. Braver disagreed with Ms. Prather's calculations, which would have allowed the Government to highlight inconsistency in defense expert testimony. (CR Doc. 370 at 105–06.)

Additionally, Mr. Minns' decision regarding when to call witnesses seemed to be influenced by the witnesses the Government actually called; thus establishing that Mr. Minns was making a reasoned choice of which witnesses to utilize rather than unreasonably failing to call witnesses. (Doc. 370 at 104) (stating that Mr. Minns did not call Mr. Braver during the guilt-phase of the trial due to the Government not calling particular experts).

Movant claims that it was "not a sound trial strategy" for Mr. Minns to refuse to call these experts based upon his evaluation of the strength of the Government's case. (Doc. 18 at 3.) Movant's argument, however, is conclusory, and does not rebut the extensive presumption of reasonableness given to trial counsel's strategic decisions. Mr. Minns investigated the possibility of using these experts, observed the strength and focus of the Government's case, and ultimately chose not to call on them to testify. Thus, even if the witnesses' testimony would have been tangentially responsive to the Government's case, Mr. Minns acted within the wide range of reasonableness in refusing to call them.

For this same reason, Movant cannot show prejudice. Movant contends that as part of their testimony, these expert witnesses would have presented evidence that could have negated willfulness. (Doc. 18 at 4–11.) Weighing the expert's testimony in their reports against the Government evidence during trial, there is not a reasonable probability that the jury would not have found willfulness. Movant is attempting to dissect and magnify the conclusions in these expert reports. While small portions of these experts' testimony would have been relevant in responding to the Government's case, they do not present the necessary evidentiary force to show a reasonable probability that the outcome would have been different.

Movant argues that this Court's finding during sentencing, where Mr. Minns did directly call an expert witness, that the Government did not establish a tax loss on a preponderance of the evidence standard shows a reasonable probability that the outcome of the guilt-phase of the proceeding would have been different had Mr. Minns called the experts. (Doc. 14 at 8.) As noted above, however, tax loss is not an element of the offense of which Movant was convicted. This Court's finding was relevant as to the sentence imposed and not as to Movant's guilt. A specific finding by a specific authority following testimony on a specific topic by a specific witness does not establish, as Movant suggests, that other findings by another authority would be made following testimony on other topics by other witnesses. *See* (*Id.* at 9) ("Had witnesses testified and evidence [been] presented at trial, the fact finder, like this Court, reasonably would have found that the government had not met its burden of proof on any count.").

Additionally, Mr. Minns' recommendation that Movant not testify at trial establishes neither deficient performance nor prejudice. It is reasonable for an attorney to recommend that a criminal defendant not waive their Fifth Amendment right against self-incrimination. *Cf.* U.S. Const. amend. V; *Brown v. United States*, 356 U.S. 148, 155–56 (1958) (discussing Fifth Amendment waiver). Mr. Minns, after consideration, ultimately decided that it would be imprudent to call Movant as a witness given Rusch's testimony. *See* (CR Doc. 330 at 1417–18) (noting that Mr. Minns' recommendation that Movant

- 18 -

testify was contingent on Rusch's testimony); (CR Doc. 338 at 2948) (noting that Mr. Minns told his client, after deliberation, not to testify); *see also* (CR Doc. 323 at 9) (discussing Mr. Kimerer's pretrial uncertainty as to whether Movant and his co-defendant would testify). Further, Movant does not describe the content of his proposed testimony, and thus cannot show prejudice due to a failure to show a reasonable probability that the outcome of the proceeding would have been different.

Furthermore, Mr. Minns' statements regarding his own performance do not establish constitutionally ineffective assistance of counsel. First, Movant highlights Mr. Minns' statement "we really shouldn't have professional witnesses. We should have experts. We need experts," (Doc. 7-1 at 1), as an admission that Mr. Minns believed the defense needed to call experts to put on their case. Movant fails to appreciate the context surrounding this statement. Mr. Minns was not admitting that the defense needed experts, but was criticizing the Government for using what he calls "professional witnesses," who he claims "go to witness-testifying school," while conceding that experts are important to the adversarial process. (CR Doc. 338 at 2953.) Second, Mr. Minns' statement during sentencing that he made "some seriously bad strategy decisions" does not establish that he provided constitutionally ineffective assistance of counsel. An admission of imperfect performance is not necessarily an admission to the sort of seriously grave error required to establish constitutional ineffectiveness. This is particularly true in the sentencing context, where an attorney could wrongfully surmise that such prostration would garner sympathy for the soon-to-be-sentenced client. Additionally, attorneys are equally subject to the hindsight bias that courts must guard against when evaluating past performance with the benefit of future knowledge, making their own after-the-fact admissions suspect.

Finally, Movant's claim that Mr. Minns presented no evidence, making him ineffective, shows neither deficient performance nor prejudice, because it is conclusory and does not suggest what evidence Mr. Minns should have presented and how this would have affected the outcome of the case. *See Secrease v. Walker*, No. 2:09-cv-299

JAM TJB, 2011 WL 2790155, at *10 (E.D. Cal. July 13, 2011) (citing *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)), *adopted by*, No. 2:09-cv-299 JAM TJB (E.D. Cal. July 22, 2011).

## 2. Ground Four

Movant makes four claims of ineffective assistance of counsel concerning Ms. Bertrand's work before and after trial. First, Movant claims that Ms. Bertrand was paid for work, regarding the investigation of jurors, that she did not complete. (Doc. 7 at 8.) Second, Movant argues that Ms. Bertrand's representation of him in an ultimately dismissed state court proceeding and in a federal bond hearing behooved her to present that dismissal to this Court. (*Id.*) The effect of this presentation, Movant claims, would have been to lower his custody level, which would have resulted in incarceration in Arizona, near his family, rather than in Texas. (*Id.*) Movant's third claim is difficult to dissect. It appears that Movant is claiming that Ms. Bertrand was aware of an affidavit by Pierre Gabris and that she told Movant of this fact, but later claimed that she learned of this affidavit from Movant. (*Id.*) Further, she was allegedly in direct contact with Mr. Gabris, Mr. Perucchi, and Movant's counsel in Movant's civil case against Mr. Perucchi. (*Id.*) Despite all of this, Movant claims, Ms. Bertrand failed to "obtain and file" the Perucchi Declaration with this Court. (*Id.*) Finally, Movant's fourth claim is that following Movant's incarceration, Ms. Bertrand refused to directly communicate with Movant, except for occasional phone calls, even regarding Movant's Rule 33 motion for a new trial, effectively "denying [Movant] access to the [C]ourt." (*Id.*) This prevented Movant from providing allegedly new information to the Court, such as the Perucchi Declaration. (*Id.*)

The Government argues that Movant was not owed constitutionally effective assistance of counsel in preparing his Rule 33 motion for a new trial. (Doc. 11 at 6.) Because this Court previously treated that motion as a collateral action for the purposes of AEDPA's statute of limitations, the Government argues, it should treat it similarly for determining Movant's constitutional protections. (*Id.*) This Court disagrees; its previous

holding was limited to the statute of limitations context and is not determinative for Movant's right to effective assistance of counsel. Therefore, following the Ninth Circuit Court of Appeals precedent discussed above, Movant had a right to effective assistance of counsel in filing his Rule 33 motion.

First, assuming that it is objectively unreasonable for an attorney to fail to perform work for which the attorney was paid, Movant was not prejudiced by Ms. Bertrand's alleged failure to "complete[] her work [or her] refus[al] to return unused funds." (*Id.*) Movant's claim suggests that Ms. Bertrand could have remedied her allegedly incomplete performance by returning the unearned funds. (*Id.*) Thus, Movant's claim is focused on compensation, not procedural outcome. Therefore, because Movant does not suggest that there is a reasonable probability that the outcome of the proceedings would have been different if Ms. Bertrand completed her allegedly deficient jury investigation, Movant is not prejudiced.

Second, assuming that Ms. Bertrand knew of, and failed to disclose, the information relating to the dismissal of Movant's state court proceeding, Movant has failed to show prejudice. Movant does not argue that the result of the sentence would have been different, but rather that Movant's custody level would have been lowered if this information was known. Custody level determinations, however, are not made by this Court, but by the Bureau of Prisons, and cannot be reviewed in a Section 2255 action. *Johnson v. United States*, Nos. 3:11-cv-345-FDW, 3:07-cr-173-FDW, 2012 WL 6642085, at *3 (W.D.N.C. Dec. 20, 2012). Therefore, Movant has failed to show that there is a reasonable probability that the result of the proceeding would have been different; therefore, he fails to show prejudice.

Third, even assuming that Ms. Bertrand was aware of the Gabris affidavit before Movant was, that she was in contact with Mr. Gabris, Mr. Perucchi, and Movant's state-court attorney, and that she failed to obtain and submit the Perucchi Declaration, Movant has failed to show prejudice. The Ninth Circuit Court of Appeals affirmed this Court's express rejection of the claim that the Perucchi Declaration contained information that

would provide any basis for requiring a new trial. *United States v. Kerr*, No. 15-10393 (9th Cir. Sept. 27, 2017); (CR Doc. 475 at 12 n.5). Thus, because Movant has not shown a reasonable probability that the outcome of the proceeding would have been different had Ms. Bertrand submitted the Perucchi Declaration, he was not prejudiced.

Fourth, assuming that Ms. Bertrand refused to communicate with Movant directly, Movant fails to show prejudice. Movant's only specific claim in this regard is that the failure to communicate resulted in Ms. Bertrand failing to file the Perucchi Declaration. As discussed in the previous paragraph, that alleged failure does not constitute prejudice. For the same reason, the purported cause of that non-prejudice—Ms. Bertrand's alleged failure to communicate—does not constitute prejudice.

## E. Ground Three: Appointment and Criminal Referral Issues

The strongest formulation of Movant's non-defaulted and un-waived appointment claim proceeds in five steps. *See* (Doc. 7 at 7; Doc. 7-1 at 13–17.) The Assistant United States Attorneys ("AUSAs") and Department of Justice ("DOJ") trial attorneys who initiated and pursued prosecution were improperly appointed. Therefore, they were not proper representatives of the United States in the criminal proceeding. Thus, the United States was not a party to the action. As a result, this Court had no subject-matter jurisdiction over the criminal proceeding. Accordingly, this Court must vacate the criminal conviction that was rendered without proper authority.

Federal courts are courts of limited jurisdiction and must have subject-matter jurisdiction to authoritatively render judgment. *United States v. Jacobo Castillo*, 496 F.3d 947, 951 (9th Cir. 2007) (en banc); *see* Restatement (Second) of Judgements § 1 (Am. Law. Inst. 1982). For circuit and district courts, the outer bounds of this jurisdiction are defined by the Constitution, while the inner bounds are defined by federal law. U.S. Const. art. III, § 2, cls. 1 & 2 (stating that the original jurisdiction of the Supreme Court cannot be modified by federal law). Article III requires that a "case" or "controversy" exist for a federal court to have subject-matter jurisdiction over a proceeding. U.S. Const. art. III, § 2, cl. 1; *see Flast v. Cohen*, 392 U.S. 83, 94–96 (1968)

("[T]he judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'").

The Constitution enumerates particular cases and controversies over which federal courts have subject-matter jurisdiction, including those "Controversies to which the United States" is a party and "Cases . . . arising under . . . the Laws of the United States." U.S. Const. art. III, § 2. Thus, in a federal criminal proceeding, federal courts have jurisdiction where the United States is a party for two reasons. First, by the mere fact that the United States is a party. Second, because the United States has standing to bring criminal proceedings under federal law. In contrast, when the United States is not a party to a federal criminal proceeding, a federal court has no subject-matter jurisdiction, because the United States is not a party and because private individuals have no standing to claim alleged violations of federal criminal law. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (holding that private individuals have no "judicially cognizable interest in the prosecution or nonprosecution of another"); *cf. Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 797–801 (1987) (discussing the rare situation, motivated by separation of powers concerns and the inherent power of courts to regulate judicial proceedings, where a court can empower a private individual to prosecute criminal contempt proceedings as a representative of the United States).

It is well-settled that a federal court's jurisdiction cannot be expanded by statute to extend beyond the Constitution's limits. *See* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States *which shall be made in Pursuance thereof* . . . shall be the supreme Law of the Land"); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 180 (1803) ("[A] law repugnant to the constitution is void."); *Hodgson v. Browerbank*, 9 U.S. (5 Cranch) 303, 304 (1809) (A "statute cannot extend the jurisdiction [of a federal court] beyond the limits of the constitution."). By statute, district courts have original jurisdiction over "offenses against the laws of the United States." 18 U.S.C. § 3231 (2012). This broad statutory grant of authority over criminal matters is constrained, however, by the Article III case-and-controversy requirement.

When a trial court rendered a judgment without subject-matter jurisdiction, a habeas court can provide relief. *Bowen v. Johnston*, 306 U.S. 19, 23–24 (1939).

The United States is a party to a proceeding if a single "proper representative" participates, *United States v. Providence Journal Co.*, 485 U.S. 693, 708 (1988); *United States v. Durham*, 941 F.2d 886, 892 (9th Cir. 1991); *United States v. Garcia-Andrade*, No. 13-CR-993-IEG, 2013 WL 4027859, at *5 (S.D. Cal. Aug. 6, 2013). This designation is not defeated by the presence of improper representatives. *United States v. Plesinski*, 912 F.2d 1033, 1038 (9th Cir. 1990). Indeed, an unauthorized attorney may appear "in court alone on several occasions" and jurisdiction is not defeated so long as that attorney "was at all times acting under the direction and supervision of" a proper representative. *Plesinski*, 912 F.2d at 1038. Only "officers of the Department of Justice, under the direction of the Attorney General" may be proper representatives of the United States in criminal proceedings, "[e]xcept as otherwise authorized by law." 28 U.S.C. § 516 (2012); accord Fed. R. Crim. P. 1(b).

Officers must be appointed in accordance with the Appointments Clause. U.S. Const. art. II, § 2, cl. 2. AUSAs and DOJ trial attorneys are inferior officers of the United States. *See Plesinski*, 912 F.2d at 1036–37. The default rule is that inferior officers may be appointed only by the President with the advice and consent of the Senate. U.S. Const. art. 2, § 2, cl. 2. Congress, however, may vest this appointment authority "in the President alone, in the Courts of Law, or in the Heads of Departments." *Id.*

Congress has vested the appointment power of AUSAs, 28 U.S.C. § 542(a) (2012), and DOJ trial attorneys, *id.* § 515, in the Attorney General, who is the head of the Department of Justice, *id.* § 503. The Attorney General may delegate this appointment power to others within the Department of Justice. *See id.* § 510 (permitting delegation of "any function of the Attorney General"); *Plesinski*, 912 F.2d at 1036–37.

AUSAs are required to take an oath of office "to faithfully execute [their] duties," 28 U.S.C. § 544 (2012), and failure to take this oath prevents an AUSA from being a proper representative of the government, *Plesinski*, 912 F.2d 1039; *see* Fed. R. Crim. P.

1(b). Mere failure to re-administer a lapsed oath, however, does not prevent an attorney from properly representing the United States if that attorney is unaware of the lapse. *Plesinski*, 912 F.2d at 1039. DOJ trial attorneys must also take an oath, *see* 28 U.S.C. § 515(a) (2012); 5 U.S.C. § 3331 (2012); however, there is no caselaw in this circuit discussing whether this oath is a condition precedent to their representative capacity. This Court assumes, without deciding, that this oath must be taken before DOJ trial attorneys can act in their representative capacity.

According to Movant, Timothy J. Stockwell, a DOJ trial attorney who prosecuted Movant's case, was properly appointed and originally took an oath which has since lapsed. (Doc. 7-1 at 13; Doc. 7-22.) According to the Court's records, Mr. Stockwell was involved throughout the entire life of the underlying criminal case. Thus, Mr. Stockwell was a proper representative of the government in the underlying criminal case, providing this Court with subject-matter jurisdiction in that proceeding.

Movant also "questions whether the present attorney appearing for the government" in this Section 2255 action is properly appointed. (Doc. 14 at 11 n.8.) Movant fails to provide evidence establishing that there is no properly appointed attorney who took their oath in the present action; therefore, this Court is satisfied as to its present subject-matter jurisdiction.[4]

### F. Discovery, Evidentiary Hearing, and Motion to Compel

In a Section 2255 proceeding, a court need not order an evidentiary hearing or permit discovery where a movant's claims, if true, would not entitle him to relief. Rule 6(a) of Rules Governing Section 2255 Proceedings (stating that discovery is discretionarily allowed on a finding of good cause); *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (defining good cause as movant's showing that if his claims were true he would be entitled to relief (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969))); 28

---

[4] Because subject-matter jurisdiction is a condition precedent to this Court's adjudicatory power, the Government must inform the Court if it knows that no Government attorney, appearing in the underlying criminal case or the present Section 2255 action, satisfies the appointment and oath requirements.

U.S.C. § 2255(b) (2012) (requiring an evidentiary hearing except where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.").

Because Movant's un-waived and non-defaulted claims, taken as true, would not entitle him to relief, this Court will not allow any form of discovery.

IV.    **Conclusion**

This Court has reviewed all of Movant's claims de novo and finds that Movant is not entitled to Section 2255 relief.

Based on the foregoing,

**IT IS ORDERED** that the Magistrate Judge's Report & Recommendation, (Doc. 17), is **ACCEPTED** and Movant's objections, (Doc. 18), are **OVERRULED**; accordingly,

- Movant's amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Doc. 7; CR Doc. 474) is denied and dismissed with prejudice and the Clerk of the Court shall enter judgment accordingly;
- Leave to proceed *in forma pauperis* on appeal is denied;
- A Certificate of Appealability is denied, because Movant has not made a substantial showing of the denial of a constitutional right, *see Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000);

**IT IS FURTHER ORDERED** that Movant's Motion to Compel Government to Produce Documents, (Doc. 19), is **DENIED**.

Dated this 24th day of October, 2017.

James A. Teilborg
Senior United States District Judge