**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Quiel, | No. CV-16-01535-PHX-JAT |
| Petitioner, | CR-11-02385-PHX-JAT |
| v. | **ORDER** |
| USA, | |
| Respondent. | |

Pending before the Court is Michael Quiel's ("Petitioner") Amended Motion to Reconsider Order, (Doc. 24), which fully incorporates Petitioner's Motion to Reconsider Order, (Doc. 23). Much of the background of this case is set out in this Court's order denying Petitioner's request for 28 U.S.C. § 2255 relief. (Doc. 21). Subsequent to the Court's denial of § 2255 relief: (1) Petitioner filed a motion for reconsideration and an amended motion for reconsideration, (Docs. 23 & 24); (2) the Government filed a response to Petitioner's amended motion for reconsideration, (Doc. 31), pursuant to this Court's order, (Doc. 28), and Petitioner permissibly filed a reply, (Doc. 32); and (3) the Government filed evidence allegedly establishing that at least one attorney in the underlying criminal case was appointed pursuant to the Appointments Clause and gave the statutorily-required oath of office, (Doc. 35), as required by the Court, (Doc. 34), and Petitioner objected to that evidence, (Doc. 36), which he later supplemented, (Doc. 37).[1]

---

[1] Additionally, Petitioner has appealed this Court's denial of § 2255 relief. (Doc. 25). The Ninth Circuit has held that appeal in abeyance pending resolution of Petitioner's amended motion for reconsideration. (Doc. 27).

## I. Governing Law

Motions for reconsideration are disfavored, and "[t]he Court will ordinarily deny" such motions "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g). The party seeking reconsideration must "point out with specificity the matters the movant believes were overlooked or misapprehended by the Court, any new matters brought to the Court's attention for the first time and the reasons they were not presented earlier, and any specific modifications being sought in the Court's order." *Id.* The movant is not permitted to repeat arguments that were rejected in the challenged order. *Id.* The Court may deny a motion for reconsideration for failure to abide by any of these rules.

## II. Analysis

Petitioner contends that the Court erred in deciding three of his arguments in favor of § 2255 relief. (Docs. 23 & 24).

### A. Appointments Clause[2]

Petitioner first contends that the Court erred in finding that the attorneys who prosecuted his criminal case were appropriately appointed and had taken the statutorily required oaths of office, and additionally by concluding that it had subject-matter jurisdiction over the case. (Doc. 23 at 2–6); (Doc. 32 at 3–7). Given that this Court must have subject-matter jurisdiction to render authoritative judgments, the Court ordered the Government to produce evidence that at least one of the attorneys who prosecuted the underlying criminal matter was properly appointed and took an oath of office. (Doc. 34). In response, the Government submitted evidence establishing that Timothy Stockwell

---

[2] The Court notes that the Ninth Circuit has recently suggested that Article II appointment deficiencies do not divest federal courts of Article III jurisdiction. *See Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179 (9th Cir. 2016). This holding seems to conflict with prior cases finding that appointment defects are jurisdictional. *See United States v. Durham*, 941 F.2d 886, 892 (9th Cir. 1991); *United States v. Plesinski*, 912 F.2d 1033, 1036–39 (9th Cir. 1990). The Court need not resolve this potential intra-circuit conflict, as Petitioner's claim fails even if deficient appointments divest this Court of jurisdiction.

("Stockwell") and Monica Edelstein ("Edelstein") were both properly appointed and took the required oaths of office. *See* (Docs. 35-1–35-4). Petitioner filed an objection, followed by a supplemental objection, to the Government's evidence.[3]

Petitioner seems to make three challenges to this evidence. First, Petitioner challenges the authenticity of the appointment affidavits. Second, he argues that the affidavits do not identify appropriate offices to which the attorneys were appointed. Third, he argues that the attorneys' oaths had expired. The Court will consider these arguments in turn.

### 1. Authenticity

Petitioner first challenges the Government's evidence on the ground that it is not authenticated and that its form suggests unreliability. (Doc. 36 at 3–4). Evidence introduced upon the Court's request in a § 2255 proceeding need not be authenticated. Rule 7 of the Rules Governing Section 2255 Proceedings ("If the motion is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the motion. The judge *may* require that these materials be authenticated." (emphasis added)). Accordingly, the Court finds that the Government's evidence was appropriately introduced without authentication.

Furthermore, the Court does not agree that the Government's evidence is in an unreliable form. According to Petitioner, the fact that the date stamps on the documents contain different fonts for the month and the day on the one hand, and the year on the other hand, suggests the possibility of fraud. (Doc. 36 at 3–4). Additionally, Petitioner contends that the appointment letters are different than others reviewed by Petitioner's counsel. (*Id.* at 4). Reasonable explanations exist for both discrepancies. As for the stamps, it is likely that the Government has a different stamp for the year than it does for the day and month. The difference in the wording and formatting of the appointment

---

[3] While the Court will consider Petitioner's objections to the Government's evidence, *see* Rule 7(c) of the Rules of Section 2255 Proceedings, the Court did not grant Petitioner leave to file the additional supplement. The Court does not accept Petitioner's justification for the supplement—that he had the opportunity to do additional research—as adequate to allow him to functionally amend his objection.

- 3 -

letters is explained by the fact that they were written by different appointing officers. *Compare* (Doc. 36-1 (providing that the appointing officer was John A. Marrella)), *with* (Doc. 35-2 (providing that the appointing officer was Ronald A. Cimino)), *and* (Doc. 35-4 (same)).

### 2. Identification of Office

Petitioner next contends that there is no "Office of the Trial Attorney" to which Stockwell and Edelstein could be appointed. (Doc. 36 at 5–6). In *Huff v. United States*, 10 F.3d 1440, 1443–44 (9th Cir. 1993), however, the Ninth Circuit held that a "trial attorney in the tax division of the Department of Justice" appropriately represented the United States in a criminal tax prosecution. A necessary implicit assumption of *Huff* is that a trial attorney is an officer, and proper representative, of the United States, even where the office is not expressly established by statute.

Additionally, as Petitioner notes in his argument, "[a]ny appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States.'" (Doc. 36 at 5 (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976)). Accordingly, it follows that the powers imbued in an individual, rather than a title, determines his or her status as an officer. *See* Aditya Bamzai, *The Attorney General and Early Appointments Clause Practice*, 93 Notre Dame L. Rev. 1501, 1509 (2018) ("The background principle in administrative law is that functions, not labels, determine the constitutional status of an administrative body." (citing *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392–93 (1995)). Both Stockwell and Edelstein were imbued with the authority "to represent the United States in any kind of legal proceeding, civil or criminal . . . in the District of Arizona." (Docs. 35-2 & 35-4).

The officer who provided them with this authority was Acting Deputy Assistant Attorney General Ronald A. Cimino ("Cimino"). (Docs 35-2 & 35-4). The Attorney General appropriately delegated his appointment power to Cimino. *See* 5 U.S.C. § 301; 28 U.S.C. §§ 509, 510, 515, 516, 533; 28 C.F.R. §§ 0.13, 0.70; *see also United States v. Nixon*, 418 U.S. 683, 694 (1974) (holding that 28 U.S.C. §§ 509, 510, 515, 516, and 533

permitted the Attorney General to appoint a Special Prosecutor); *In re Sealed Case*, 829 F.2d 50, 55 (D.C. Cir. 1987) (holding that 5 U.S.C. § 301 and 28 U.S.C. §§ 509, 510, and 515 provided implicit authorization for the Attorney General to create and appoint an "Office of Independent Counsel."). Petitioner argues that because Cimino was operating in an acting role, rather than as a confirmed Deputy Assistant Attorney General, he was not authorized to appoint Stockwell and Edelstein for longer than his acting tenure. (Doc. 36 at 7–8). Acting officers are permitted to operate in an acting capacity "for no longer than 210 days beginning on the date the vacancy occurs." 5 U.S.C. § 3346(a)(1); *see also* 5 U.S.C. § 3345. Thus, it is Petitioner's contention that Cimino could have only appointed Stockwell and Edelstein for 210 days. Furthermore, Petitioner contends that even if Stockwell and Edelstein were properly appointed, their appointments lapsed when presidential administration changed, on the theory that an officer's term is commensurate with that of his or her appointing officer. (Doc. 23 at 2–7).

This argument fails for two reasons. First, because Petitioner raises this issue for the first time on a motion to reconsider, he has waived the argument. *See* LRCiv 7.2(g). Second, no authority supports Petitioner's proposition that an officer's appointment is commensurate with the tenure of the body that appoints them.[4] Petitioner cites three cases to support this proposition: *Shurtleff v. United States*, 189 U.S. 311 (1903), *De Castro v. Board of Commissioners of San Juan*, 322 U.S. 451 (1944), and *NLRB v. SW General, Inc.*, 137 S. Ct. 929 (2017). None of these cases support Petitioner's view. Instead, *Shurtleff* and *De Castro* are focused on circumscribing limitations on the power of removal, and do not provide for the automatic termination of an officer upon the departure of his or her appointing officer. *See Kalaris v. Donovan*, 797 F.2d 376, 397

---

[4] In fact, the enduring tenure of an inferior officer, which is not terminated by the departure of the appointing officer, is one factor that has been historically relevant in differentiating inferior officers—whose appointments must comply with the Appointments Clause—from non-officer "deputies." *See* Bamzai, *supra*, at 1514 ("[V]acating the office of [a] superior would not have affected [the officer's] tenure." (quoting *United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 393 (1867) (first alteration added)). Because Petitioner contends that the prosecuting attorneys were officers, his argument that their officer status became void upon the departure of their appointing officer fails.

(7th Cir. 1986) (interpreting these cases to "conclusively demonstrate that, in the absence of a congressional statement to the contrary, inferior officers . . . serve indefinite terms at the discretion of their appointing officers.").

Furthermore, in *SW General*, the Court invalidated a complaint issued by the NLRB's acting general counsel when that officer was statutorily barred from holding that position after being nominated by the President to permanently fill that role. 137 S. Ct. 929. Thus, while this case does support the uncontroversial view that non-officers cannot perform the function of officers, it does not hold that the duration of an officer's position is commensurate with that of his or her appointing body. Petitioner claims that the Court "explained that many individuals holding office of the United States were serving 'well beyond the time limits prescribed' by law." (Doc. 23 at 3.) As an initial matter, this language does not come from the Supreme Court's decision, but rather from the circuit court decision that the Supreme Court was reviewing. *See SW General, Inc. v. NLRB*, 796 F.3d 67, 70 (D.C. Cir. 2015). Furthermore, the circuit court was expressly discussing temporal limitations provided for in the Vacancies Act, which was a precursor to the current vacancy statute, and was not implying that officers who were not temporarily filling vacant positions were subject to temporal limitations. *See id.*

Accordingly, this Court does not find that an officer's tenure is commensurate with that of his or her appointing officer. Ultimately, Stockwell and Edelstein were proper representatives of the United States, vesting this Court with subject-matter jurisdiction.

### 3. Oath of Office

Petitioner argues that Stockwell and Edelstein's oaths were deficient in various ways. (Doc. 36 at 11–13). The Court rejected much of this argument in its original order denying § 2255 relief, *see* (Doc. 21 at 24–25), and Petitioner's additional claims do not establish a "showing of manifest error or a showing of new facts or legal authority that could not have been brought to [the Court's] attention earlier with reasonable diligence." LRCiv 7.2(g).

**B. Perjury**

Petitioner contends that this Court erred in finding that he procedurally defaulted on his claim that Christopher Rusch ("Rusch") and Cheryl Bradley ("Bradley") perjured themselves at trial by stating that they had handled Petitioner's FBARs for the years 2000 to 2003. (Doc. 23 at 6–13); (Doc. 24). According to Petitioner, these FBARs do not exist, which is made evident by the IRS's failure to produce the forms to Petitioner after repeated requests made after appeal. (Doc. 23 at 6–13); (Doc. 14). In Petitioner's view, this claim was not procedurally defaulted, because the "IRS Criminal Investigations" in Phoenix "restrict[ed] access to" Petitioner's litigation file "which can explain why the IRS refused to answer [Petitioner's] FOIA requests and why [Petitioner] could not get the information previously." (Doc. 24 at 1–2).

Petitioner fails to adequately justify why he could not have learned that the IRS refused to turn over this information prior to his appeal. His conclusion that he could not have learned of this information, because "IRS Criminal Investigations" was blocking his access to the FBARs, misses the mark. If he had asked for the FBARs prior to appeal, and had received them, then he would have evidence that they do exist, and would have no basis to claim that Rusch and Bradley perjured themselves. Petitioner's perjury claim derives from precisely the allegations that the IRS will not turn over the FBARs because they do not exist. Thus, because Petitioner's claim only exists if the IRS refused to grant him access to the FBARs, Petitioner's failure to pursue the FBARs prior to appeal is not excused by the IRS's subsequent refusal to provide him with that information. Accordingly, the Court will not reconsider its prior finding that Petitioner procedurally defaulted this claim, because it "involves information that [Petitioner] could have learned with reasonable diligence prior to appeal." (Doc. 21).

**C. Ineffective Assistance of Counsel**

Petitioner largely restates the same arguments made in his original § 2255 petition as to why his trial attorney, Michael Minns, was constitutionally ineffective. (Doc. 23 at

13–17).[5] He has failed to put forth a "showing of manifest error or a showing of new facts or legal authority that could not have been brought to [the Court's] attention earlier with reasonable diligence." LRCiv 7.2(g).[6]

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Petitioner's Amended Motion for Reconsideration, (Doc. 24), is **DENIED**.

Dated this 14th day of September, 2018.

*James A. Teilborg*
Senior United States District Judge

---

[5] Petitioner appears to suggest that the Court acted improperly in citing the record to evaluate his ineffective assistance of counsel claim. *See* (Doc. 23 at 13 ("This Court, with no assistance from the government, went to great lengths to try to find reasons why Mr. Minns' performance was not deficient. This Court cited various places in the transcript to show there was no deficiency.")); *see also* (*id.* at 14 ("This Court went to great length to create a reason why Mr. Minns did not call Mr. Kadish . . . .")). The Court notes that in the normal course, the trial judge reviews a petitioner's § 2255 claim because of "the obvious administrative advantage in giving [the trial judge] the first opportunity to decide whether there are grounds for granting the motion." Rule 6(a) of Rules Governing Section 2255 Proceedings; *see also Carvell v. United States*, 173 F.2d 348, 348–49 (4th Cir. 1949) (noting that "it is highly desirable in [§ 2255] cases that the motions be passed on by the judge who is familiar with the facts and circumstances surrounding the trial, and is consequently not likely to be misled by false allegations as to what occurred.").

[6] For the sake of clarity, the Court notes that Petitioner mistakenly reported that the Court cited to pages 105 and 106 of Doc. 370 to support its conclusion that Mr. Minns made a reasoned choice to not call witnesses during the guilt-phase of the trial. (Doc. 23 at 16–17 (citing Doc. 370 at 105–106)). In fact, the Court cited to page 104 of that document, (Doc. 20 at 17 (citing (Doc. 370 at 104))), and was specifically referring to the following exchange between Mr. Minns and Mr. Braver:

Q. Mr. Braver, first of all, you were originally engaged on this as a rebuttal witness when the Government changed their witness list and then you were disengaged because they didn't -- were not able to put on their new witnesses. Do you remember that?

A. I do.

(Doc. 370 at 104).